IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
<u>NORTHERN DIVISION</u>

| | | |
|---|---|---|
| JEFFREY F. and DONNA LAWRENCE | * | |
| Plaintiffs | * | |
| v. | * | |
| THE "IMAGINE...!" YACHT, LLC, et al | * | CIVIL ACTION |
| Defendants | * | NO. RDB-02-CV-3224 |

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| THE "IMAGINE...!" YACHT, LLC, et al | * | |
| Third-Party Plaintiffs | * | |
| v. | * | |
| SHER & BLACKWELL, LLP | * | |
| Third-Party Defendant | * | |

\* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENTAND PARTIAL SUMMARY JUDGMENT</u>**

COMES NOW, the Plaintiffs, Jeffrey F. and Donna Lawrence, by and through their counsel Murray I. Resnick, Prabir Chakrabarty and Resnick & Abraham, L.L.C., and hereby files Memorandum in Support of its Opposition to Defendant, Latitude 38 LLC D/B/A Annapolis Bay Charters' (hereinafter referred to as "Annapolis Bay Charters") Motion for Summary Judgment, and Defendant The "IMAGINE...!" Yacht, LLC's Partial Motion for Summary Judgment (hereinafter "Imagine Yacht") and as reasons therefore, state as follows:

# INTRODUCTION

Summary Judgment is inappropriate in the present case because there is a dispute of fact about the relationship between Annapolis Bay Charters and the schooner "IMAGINE" ("IMAGINE") owned by Imagine Yacht. As a manager for Imagine Yacht, Defendant Annapolis Bay Charters owed Plaintiffs Jeffrey and Donna Lawrence a duty of care at least to see that the vessel was properly and sufficiently manned by individuals who were competent and adequately trained, experienced, supervised and equipped for the task at hand. Defendant Annapolis Bay Charters breached this duty by failing to warn Jeffrey Lawrence that the crewmembers of the IMAGINE would fire or discharge an explosive device in close proximity to the passengers. Finally, both Defendants violated Md. Code, Natural Resources Article, § 8-725.4, and its corollary COMAR 08.18.03.03 (2004) et. seq. and Plaintiffs are entitled to proceed with their private cause of action for damages.

# STATEMENT OF FACTS

Annapolis Bay Charters managed the IMAGINE. See deposition of Krystal Davis attached hereto and incorporated herein as Exhibit A at p. 15-16. There was no written agreement between Annapolis Bay Charters and its managed schooner IMAGINE. See Exhibit A at page 37. Krystal Davis, Annapolis Bay Charters' employee, stated that they never did any investigation of the chartered vessels. See Exhibit A at page 22. She stated that they would simply go on reputation. See Exhibit A at page 22. This is despite the fact that as managers they had experienced previous injuries to passengers aboard their managed vessels. See Hartford Fire Insurance Company v. Annapolis Bay Charters, U.S. District Court of Maryland, 69 F. Supp. 2d

756 (1999) ("Hartford Fire ").[1]

Annapolis Bay Charter's management of the schooner "IMAGINE" included managing the calendar for the boat, blocking out dates for charter clients, handling payments to the vessel. See Exhibit A at page 46. Annapolis Bay Charters would receive a 10% commission that was a higher commission than they would receive if they were an agent. See Exhibit A at page 46-7. Michael Bagley, owner of Imagine Yacht, in fact stated that Annapolis Bay Charters would basically manage the comings and goings with regard to private charter groups. See deposition of Michael Bagley at p. 72-73 attached hereto and incorporated herein as Exhibit B. They would do all the sales work, all the contract work, etc. and for that they would receive a 10% commission. See Exhibit B at 72-73. Annapolis Bay Charters ultimately abandoned this relationship because of the excessive cost of this arrangement. See Exhibit B at 12-13.

On September 13, 2001, Annapolis Bay Charters entered a Charter Agreement with Sher & Blackwell. See deposition of Sher & Blackwell Office Manager, Lisa Henshaw, at pp. 31-32, attached hereto and incorporated herein as Exhibit C. The Charter Agreement was signed by an employee of Annapolis Bay Charters, Krystal L. Davis, and attached to the Contract was a Charter Agreement and Conditions. Please find a copy of the Charter Agreement and Conditions attached hereto and incorporated herein as Exhibit D. Lisa Henshaw of Sher & Blackwell signed the contract on behalf of Sher & Blackwell for a chartered trip aboard the schooner IMAGINE on September 16, 2001. See Exhibit C at p. 32. The Charter Agreement and Conditions apparently was never signed. See Exhibit D.

---

[1] Hartford Fire involved a passenger whose hand was mangled when it was caught in a rope while the boat's

Plaintiff Jeffrey F. Lawrence is a partner in the firm, Sher & Blackwell. <u>See</u> deposition of Jeffrey Lawrence attached hereto and incorporated herein as Exhibit E at p. 9. On September 16, 2001 while aboard the IMAGINE, Plaintiff was getting a sandwich and something to drink below deck and came up the steps. <u>See</u> Exhibit E at p. 25. Just after he put both feet on the deck and he was kind of facing towards his right towards the rear of the vessel, there was a loud explosion type sound off to his left. <u>See</u> Exhibit E at p. 25. Mr. Lawrence had immediate onset of symptoms telling Office Manager that he could not hear and that he had ringing in his ears from the loud blast. <u>See</u> Exhibit C at pp. 21-22. Plaintiff was later diagnosed with permanent hearing loss and tinnitus as result of his exposure to this cannon. <u>See</u> Medical Report of Plaintiffs' Treating Physician, Dr. Douglas Feldman, attached hereto and incorporated herein as Exhibit F. Defendants, Annapolis Bay Charters and Imagine Yacht never warned Plaintiff Lawrence of the dangers posed by the cannon aboard the IMAGINE. <u>See</u> Exhibit E at pp. 47-48.

### **STANDARD OF LAW**

Summary Judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure; <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)("Anderson"). In the ruling on a Motion for Summary Judgment, the Court must draw all inferences in the non-moving party's favor and accept the non-moving

---

captain was attempting to dock near Oxford, Maryland. <u>Id</u>. at 759.

party's evidence as true.  Id. at 255.

## ARGUMENT

**I.    Defendant's Motion for Summary Judgment Should Be Denied Given The Clear Factual Dispute Regarding Annapolis Bay Charter's Control Over the Schooner "Imagine".**

The deposition testimony and documents produced in this matter abound with disputes regarding genuine issues of material fact regarding negligence, thus Annapolis Bay Charter's Motion for Summary Judgment clearly fails to meet this burden.  Yet, the most important dispute is the issue of control exercised by Annapolis Bay Charters over the IMAGINE.

In this matter, Annapolis Bay Charters acted as a Manager and not just as a booking agent. As Defendant's witness, Krystal Davis, states they were paid a higher commission due to the fact that they managed all aspects of Defendant Imagine Yacht's business.  See Exhibit A at p. 46-7. In this case, Annapolis Bay Charters was not just a tour operator with an independent contractor providing services for them.  In fact, Annapolis Bay Charters was responsible for all aspects of the charter except for the actual captaining of the boat itself.  See Exhibit A at page 46-7. Annapolis Bay Charter's management of the schooner "IMAGINE" included managing the calendar for the boat, blocking out dates for charter clients, handling payments to the vessel.  See Exhibit A at page 46. Annapolis Bay Charters received a 10% commission, which was a higher commission than they would receive if they were an agent.  See Exhibit A at page 46.

Michael Bagley, owner of Imagine Yacht, stated that Annapolis Bay Charters actually managed the comings and goings with regard to private charter groups.  See Exhibit B at pp. 72-3. They would do all the sales work, all the contract work, etc. and for that they would receive a

10% commission. See Exhibit B at pp. 72-3. Even after Annapolis Bay Charter's counsel tried to rehabilitate the Mr. Bagley's testimony he repeated that his schooner was under the management of Annapolis Bay Charters. See Exhibit B at p. 73.

The significance of the dispute over the control exercised by Annapolis Bay Charters over the schooner "Imagine" and its crew is integral to their "duty of care" and their defense that they were "a chartering broker" or "booking agent". See Annapolis Bay Charter's Motion for Summary Judgment at p. 9.

An instructive case is Chan v. Society Expeditions, which found a charterer liable where it had a right or ability to control the actions of the crew. 123 F.3d 1287, 1293-94 (9th Cir. 1997)("Chan"). Chan involved passengers on a cruise arranged by a cruise carrier on a cruise ship. Id at 289. The Chans were injured when an inflatable raft on which they were ferried from a cruise ship to shore capsized in the South Pacific. Id. The Ninth Circuit Court of Appeals held that by the sale of a ticket there arises a contractual relationship between the company and the passenger, to which relationship the law by its own force annexes certain implied obligations and duties. 123 F. 3d at 1290. It is undisputed that Jeffrey Lawrence as a partner of Sher & Blackwell purchased a chartered trip aboard the IMAGINE from Annapolis Bay Charters. See Exhibit D.

Chan further held that the contract of carriage imposes a duty on the carrier to transport passengers safely, and to exercise reasonable care under the circumstances of each case. 123 F. 3d at 1290. There is clearly a dispute of fact whether Annapolis Bay Charters exercised reasonable care in the instant matter. Defendant, in the testimony of their own Captain, stated that James Lee, the owner of Annapolis Bay Charters, actually served on board as a member of the

crew on occasions prior to the date of occurrence. See Affidavit of James Lee attached hereto and incorporated herein as Exhibit G. Mr. Lee also states that he never gave any instructions regarding shipboard safety or any type of instructions or guidelines to the captain and crew of the IMAGINE. See Exhibit G. However, as even a tour operator, he had a duty to investigate the quality of supplier services. Chan, 123 F. 3d 1290. This would include events like the firing of the cannon that permanently damaged the hearing of the Plaintiff Jeffrey Lawrence.

Mr. Lee states that he was not aware of the use of any cannon on board the Yacht Imagine prior to its discharge on this vessel but states that he assumed that the captain and crew would discharge it only after advising passengers that it would be loud and to move away from it and to cover their ears. See Exhibit G. As Plaintiff stated in his deposition, he was never advised of this warning. See Exhibit E at pp. 47-48. Therefore, by his affidavit Mr. Lee admits that there was a breach of the standard of care.

**II.    Defendant Annapolis Bay Charter's Analogy To Case Law Involving Charterers , Travel Agents and Brokers are Unfounded Given The Significant Factual Differences With Plaintiffs' Claims.**

Defendant Annapolis Bay Charters attempts to classify itself as a "charter broker". See Motion for Summary Judgment at page 9. Since that there are not many cases involving "charter broker" liability, Defendants cites a number of cases involving tour operators, booking or ticket agents and marketing representatives. Klinghoffer v. Achille Lauro, 816 F. Supp. 934 (S.D. NY 1993)("Klinghoffer"). But these cases are factually dissimilar to the present dispute.

In Klinghoffer the Plaintiffs attempted to sue the travel agent and marketing representative of the ship owner for injuries they sustained on a ship that was hijacked resulting in the death of a passenger. Id. at 937. This is a wholly distinguishable matter from the case at hand. In the

present matter the firing of the cannon was a usual practice of the crew of the IMAGINE as opposed to a completely unforeseeable event like a hijacking.  Id.

Similarly, in Stafford Stafford v. Intrav, Inc., 841 F. Supp. 284 (ED. Mo. 1993)("Stafford"), a passenger attempted to sue a tour operator for negligence relating to an open and obvious danger apparent to the traveler.  Id. at 286.  For Mr. Lawrence, the danger was in no way "open and obvious".  The cannon itself was kept underneath the vessel.  See Exhibit B at pp. 33-4.  Plaintiff Lawrence could not have known of the presence of the cannon.  Defendant Annapolis Bay Charters undertook a greater degree of care than a mere tour operator by its 10% commission and its management of the relationship with potential passengers.  The Court in Stafford found that a travel agent who arranges vacation plans has a duty to disclose reasonably obtainable information that is material to the object of the agency.  Id. at 287.  The Court rejected the argument in that case only because the danger of an open gangway was obvious and apparent to the traveler.  Id.  In this case, the cannon was not an open and obvious danger.

Defendant heavily relies on Honeycutt v. Tour Carriage, Inc., et al, 997 F. Supp. 694 (W.D NC 1996).  But Honeycutt is a distinguishable case factually.  In Honeycutt, the Plaintiff broke her ankle during a five (5) day vacation trip while horseback riding.  The Plaintiff undertook a separate excursion apart from the trip she had bought from the Defendant tour operator.  Id.  In the present circumstances, there is not an extra level attenuation as in Honeycutt, since Annapolis Bay Charters was the managing the trips and the schooner IMAGINE directly.

### A.     The Cases Cited By Annapolis Bay Charter All Involve Written Waivers of Liability There Were No Written Waivers Of Liability In The Present Matter.

The cases on which Defendant Annapolis Bay Charters primarily rely all involve clear

waivers of liability signed by potential passengers.  In <u>Klinghoffer</u>, the travel agent specifically had terms in their Contract disclaiming coverage and the Court in their determination specifically referenced this fact.  816 F. Supp. 934, 936.  The tour operator in <u>Honeycutt</u> had a specific contractual disclaimer in their contract.  977 F. Supp. 694, 699-700.  <u>Stafford</u> concerned language in a tour brochure that specifically disclaimed liability.   841 F. Supp. 284, 287.  [2]

Plaintiffs' claim does not involve a disclaimer.  In fact, there is no disclaimer at all for the actions of either the owner or their manager Annapolis Bay Charters.  <u>See</u> Exhibit D.  Paragraph 4 specifically disclaims any indemnification or subrogation provisions for the negligent acts of the <u>owner</u> of the vessel.  <u>See</u> Exhibit D.  The liability of Annapolis Bay Charters is not even mentioned.  Thus, there were no disclaimers of any sort in the Charter Agreement between Annapolis Bay Charters and Plaintiff Jeffrey Lawrence.  Not to mention the fact that there was no written agreement between Annapolis Bay Charters and Imagine Yacht.  <u>See</u> Exhibit A at p. 15

### IV.     Annapolis Bay Charter's Owed Jeffrey Lawrence a Duty of Care Which They Clearly Breached

The cases cited by Annapolis Bay Charters themselves evidence the basis for a duty of care.  <u>Klinghoffer</u> specifically states that a charterer who assumes control or operation of the vessel does have a duty of care.  816 F. Supp. 934, 936.  In cases, such as the present one, where a broker assumes control of the vessel directly a charter broker can be liable for the conduct of the crew of the vessel.

Besides, even a travel agent has an affirmative duty to investigate the quality of supplier services.  <u>Honeycutt v. Tour Carriage, Inc.</u>, 997 F. Supp. 694, 702 (W.D. NC 1996).  In this case,

---

[2] Even if there was disclaimer it may have been unenforceable because it did not give adequate notice that passengers

the cannon was fired relatively frequently. See Exhibit B at pp. 42-3. This was information that was reasonably obtainable by the manager in this case, Annapolis Bay Charters 38, and was clearly not open or obvious to the traveler in this case Plaintiff Jeffrey Lawrence. Id. at 701-702. Accordingly, even a travel agent who arranges vacation plans . . . has a duty to disclose reasonably obtainable information that is material to the object of the agency. Stafford, 841 F. Supp. 284.

Regardless of any other duties owed by Annapolis Bay Charters, they owed Plaintiff Jeffrey Lawrence a standard duty of reasonable care. Id. In this case, Annapolis Bay Charters breached this duty as even a cursory discussion or investigation of the Imagine schooner would have informed them of the crew of the Imagine Yacht's practice of firing a cannon on board the vessel. From the Defendant's own testimony, Defendant did not take even the smallest available measures to protect the safety of passengers aboard their managed vessels. As Krystal Davis stated, she merely relied only on "the reputation in the community". See Exhibit A at p.14. This was despite the fact that Annapolis Bay Charters had previous injuries aboard their vessels. See Hartford Fire Insurance Company v. Annapolis Bay Charters, U.S. District Court of Maryland, 69 F. Supp. 2d 756 (1999) ("Hartford Fire "). Consequently, Annapolis Bay Charters breached its standard of care to Plaintiffs.

Since there is not a great deal of case law on point, as Annapolis Bay Charters itself concedes in Defendant's Motion for Summary Judgment Page 10, it is just as instructive to consider the general standard of care owed to business invitees in the State of Maryland. If a visitor or invitee enters private premises at their express invitation, a supplier has a heightened

---

were relinquishing important rights. Klinghoffer, 816 F. Supp. 934, 936.

duty to protect the visitor or invitee not only against dangers of which the inviter knows but also against those with which reasonable care he might discover.  Paquin v. McGinnis, 229 At. 2d. 86, 246 Md. 569 (1967) ("Paquin").  Annapolis Bay Yachts clearly breached this standard.

**V.     Plaintiffs' Suffered Harm Of a Kind Different Than That Suffered By Other Members of The Public Therefore They Properly Have A Private Cause of Action for Violation of Annotated Code Of Maryland, Natural Resources Article, § 8-725.4.**

A public nuisance is an unreasonable interference with the rights of the community at large and is usually punishable as a crime.  Potomac River Ass'n Inc. v. Lundenberg Md. Seamanship School, Inc., 402 F. Supp. 344, 357 (D. MD. 1975).  Md. Code, Natural Resources Article, § 8-725.4, and its corollary COMAR 08.18.03.03 (2004) et. seq. contains criminal penalties for violations of this statute.  [3] A tort for public nuisance may be enforced by a private action if the plaintiff has suffered harm of a kid different than that suffered by other members of the public.  Id.  Maryland law supports this theory.  Id.  [4]

The firing of the cannon aboard the schooner IMAGINE, violated Annotated Code Of Maryland, Natural Resources Article, § 8-725.4 by exceeding a noise level of 90dB.  Defendants do not contest the fact that the cannon produced a noise in excess of 90 Db.  Defendant Imagine Yacht's own expert stated that it was 140 dB.  See Deposition of Richard Peppin at p. 44, attached hereto and incorporated herein as Exhibit H.  Plaintiff Jeffrey Lawrence suffered harm of a different kind than that suffered by other members of the public, since his hearing was damaged.  Accordingly Plaintiffs are entitled to maintain their private cause of action against Defendants.

WHEREFORE, for the foregoing reasons, Plaintiff Jeffrey Lawrence requests that

---

[3] It is unclear from the limited case law on application of this statute whether it applies to only engine noise.  Md. Code, Natural Resources Article, § 8-725.4; COMAR 08.18.03.03 (2004) et. seq.

Defendants' Motions for Summary Judgment and Partial Motion for Summary Judgment be denied.

    /s/
Prabir Chakrabarty
Murray I. Resnick
Resnick & Abraham, L.L.C.
One East Franklin Street
Baltimore, MD 21202
(410) 539-6087

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2004, a copy of the foregoing Memorandum in Support of Opposition to Motion for Summary Judgment, was served via e-filing and/or mailed, first class, postage prepaid to David W. Skeen, Esquire, Wright, Constable & Skeen, L.L.P., One Charles Center, 16th Floor, 100 N. Charles Street, Baltimore, Maryland 21201-3812, Attorneys for Defendant and Third-Party Plaintiff.

    /s/
Prabir Chakrabarty

---

[4] General federal maritime law frequently uses statutes and decisional law of the states for foundation to determine the consequences of defendants' tortious activities. Union Oil Co. v. Oppen, 501 F.2d 558, 562 (9th Cir. 1974).