**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
<u>NORTHERN DIVISION</u>**

| | | |
|---|---|---|
| JEFFREY F. and DONNA LAWRENCE | * | |
| Plaintiffs | * | |
| v. | * | CIVIL ACTION |
| THE "IMAGINE...!" YACHT, LLC, et al. | * | NO. RDB-02-CV-3224 |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

| | |
|---|---|
| THE "IMAGINE...!" YACHT, LLC, et al. | * |
| Third-Party Plaintiffs | * |
| v. | * |
| SHER & BLACKWELL, LLP | * |
| Third-Party Defendant | * |
| \* \* \* | |

**<u>REPLY TO PLAINTIFFS' OPPOSITION TO LATITUDE 38º LLC
MOTION FOR SUMMARY JUDGMENT</u>**

Defendant and third-party plaintiff, Latitude 38º LLC (hereinafter "Latitude") by its attorneys David W. Skeen and Wright, Constable & Skeen, LLP, replies to Plaintiffs' Opposition to its Motion for Summary Judgment.

Plaintiffs appear to raise five points in their opposition to defendant, Latitude 38º LLC's Motion for Summary Judgment:

152783 v. (10207.00001)

Plaintiffs' claim that:

(1) There is a dispute of fact as to what control defendant exercised over the crew of Yacht IMAGINE;

(2) Defendant owes a duty of a common carrier to plaintiffs;

(3) Defendant's case authorities rely on contractual disclaimer language;

(4) Maryland law of premises liability applies and establishes a "heightened duty;" and

(5) Violation of an engine noise statute creates a private cause of action.

## I. There is No Dispute of Fact as to the Relationship Between Latitude 38º LLC t/a Annapolis Bay Charters and Yacht IMAGINE, as Would Heighten Latitude's Duty of Care and Liability to the Plaintiffs.

Plaintiffs direct the court's attention to the testimony of Yacht IMAGINE's Captain, Mike Bagley, suggesting that Latitude 38º "managed" Schooner Yacht IMAGINE. (See Plaintiffs' Memo p. 2)  However, when Capt. Bagley's understanding of Latitude 38º's specific duties was explored on deposition it was apparent that Latitude 38º's specific duties only involved booking of trips, hiring of the caterer, telling the vessel where to show up, how many passengers would be going on the trip, and collecting the money. (See Bagley Depo. pp. 73-74)

> Q. Ok.  But the managing that they [Latitude 38º] do is what Krystal Davis described in her deposition.
>
> A. That's correct.
>
> Q. That is you hire the caterer.  Is that right?  You tell them

> when and where to show up? She tells you where to show up, how many passengers there are going to be, and collects the money?
>
> A.   That's correct.
>
> Q.   And that's it, right?
>
> A.   That's correct.  (See Plaintiffs Ex. B)

While plaintiffs offer up these activities as "operational" responsibilities, it is apparent based on the authorities previously cited in Latitude's opening brief (pp. 10-14) that these are simply booking agent responsibilities and have nothing to do with operation or control of the vessel. The Affidavit of Mr. James Lee, Latitude's principal, remains unrebutted. (Latitude Opening Brief Ex. 2) Yacht IMAGINE, not Latitude 38°, hires, supervises or trains the crew, and operates and maintains the Yacht IMAGINE (Id. para. 5).

Plaintiffs' recitation of other facts on page 3 and 4 of its Memorandum do not raise any issues of fact. Plaintiffs' comment that page 2 of the Charter Agreement and Conditions is "not signed" would seem irrelevant. The Charter Agreement and Conditions were signed on the front page which states "This Agreement…is subject to all the terms and conditions on page two, in addition to any addendums attached, which are made a part hereof." In fact, plaintiffs quote and rely upon the Charter Agreement and Conditions (specifically paragraph 5) in their Complaint (Count II Breach of Contract) against the defendants. Nowhere do plaintiff's renounce the Charter Agreement and Conditions.

The plaintiffs direct the court's attention to the case of <u>Hartford Fire Insurance Company v. Annapolis Bay Charters, Inc.</u>, (D.MD. 1999) 69 F. Supp 2d 756.  Apparently in an effort to show that Latitude 38° had experienced a previous personal injury on a charter, it cited this insurance coverage case involving a passenger whose hand was caught in a rope while on an unnamed boat attempting to dock near Oxford, Maryland in 1997.  Plaintiffs failed to note that the suit was against Annapolis Bay Charters, Inc., a company owned by Melissa Hartge, not Latitude 38°.  (See depo. testimony of Mike Bagley regarding his previous relationship with Annapolis Bay Charters, Inc. pp. 11-14.).  Latitude 38° LLC trading as Annapolis Bay Charters is a different company owned by Mr. James Lee, as appears from his Affidavit.  (Latitude Ex. 2)  Reference to a 1997 personal injury suit against an unidentified boat offered for charter by a different corporation under different ownership says nothing about the knowledge of Latitude 38° LLC or notice of the supposed need to investigate the Yacht IMAGINE to determine if it had a cannon on board.

II.     **Plaintiffs' Assertion that Latitude 38° Owes a Duty of a Common Carrier Under a Contract of Carriage is Not Supported by the Facts.**

Plaintiffs rely upon the case of <u>Chan v. Society Expeditions, Inc.</u>, 123 F.3d 1287 (9th Cir. 1997) in support of their claim that there are sufficient facts from which a jury could find that Latitude 38° "controls the actions of the crew."  The facts supporting the <u>Chan</u> decision are readily distinguishable from the facts of the present case.  In <u>Chan v. Society Expeditions, Inc.</u>, the entity sought to be charged with responsibility for Mr. Chan's injury was Mr. Chan's own employer, Society Expeditions.  Society Expeditions was also both the

charterer of a cruise ship and the seller of a ticket for passage directly to the plaintiff, Mr. Chan. Mr. Chan was seriously injured when the ZODIAC inflatable raft which was ferrying passengers ashore turned broadside to a wave and capsized. In <u>Chan</u> there was evidence that Society Expeditions directed and controlled the ZODIAC boat landings for the Chan cruise. In fact, Society sent three Society employees to scout out the sea conditions and landing sites, and establishing a landing route for the boats. Society Expeditions advertised the ZODIAC's versatility and safety and stating it was in the hands of "highly skilled boatmen." In addition, Society represented itself as a "carrier" (not as an agent) and issued a written passenger "Contract of Carriage" to the plaintiff.

In the present case Latitude 38° did not issue any ticket to the plaintiff, Mr. Lawrence, and did not enter into a contract of carriage with Mr. Lawrence. In fact, Latitude 38° had no direct dealings with Mr. Lawrence at all. Latitude 38° was identified as "booking agent" on the written Charter Agreement with Mr. Lawrence's law firm, Sher & Blackwell. Sher & Blackwell chartered the Yacht IMAGINE not Latitude. No one from Sher & Blackwell issued the ticket to Mr. Lawrence. In addition Latitude 38° had no employees on board on the trip to direct the crew in the course of the voyage and never made any representations that it would. To suggest that because Mr. James Lee had served as a member of the crew of Yacht IMAGINE on some occasion in the past that he "controlled" the crew on this occasion or on any occasion is an unsupportable in fact or logic.

Plaintiffs' efforts are unavailing to distinguish the authorities cited by defendant, Latitude 38°. (Latitude opening brief pp. 11-14) All Latitude's case authorities support the proposition that a charter broker, booking agent, or even a charterer is not, as a matter of law, responsible for the negligence of the crew of a vessel where it exercises no operational control. The statement that defendant, Latitude 38° "undertook a greater degree of care than a mere tour operator" (See Plaintiff's Memo p. 8) remains unsupported by case law or the facts. The fact that defendant, Latitude 38°, was not aware of the existence or use or misuse of a cannon remains undisputed for purposes of this Motion.

### III. The Cases Cited by Latitude 38° Defining the Legal Duty of a Booking Agent Do Not Depend on Contractual Disclaimers.

The plaintiffs' suggestion that the cases relied upon by Latitude are distinguishable because they also involve written waivers of liability signed by potential passengers is incorrect. The cases also address the duty of someone in the position of Latitude 38° who books a trip but has no operational control over the crew (the supplier of the service).

Restating over and over the proposition that "a charterer who assumes control or operation of a vessel does have a duty of due care" does not provide the factual content that plaintiffs' need to support that conclusion (See Memo p. 9). The obligation to investigate the quality of supplier's services was fully discussed in the initial brief. (pp. 11-14) The facts are clear that defendant, Latitude 38°, performed sufficient due diligence by directing the plaintiffs' employer to a Coast Guard certified vessel, properly insured, with a good

reputation and no known history of safety problems with cannons or anything else.  Mr. James Lee, owner of Latitude 38º states:

> Prior to the Sher & Blackwell charter of September 2001, we had brokered many other charterers between Yacht IMAGINE and charterers and received no complaints regarding the quality of the trip, safety, and competence of the captain and crew, or cleanliness of the vessel or its crew.  Captain Bagley and the crew of the vessel enjoyed an excellent reputation in the Annapolis Boating community.  The vessel was Coast Guard certified, Capt. Bagley was a duly licensed Master by the U.S. Coast Guard, and the vessel was insured.  I personally served on board as a member of the crew on occasions prior to the date of the occurrence, and found Capt. Bagley and the crew to be very capable and safe mariners.

(See Lee Affidavit para. 3, Latitude Ex. 2)

Plaintiffs have come up with no evidence to contradict any of these facts.  This is the extent of defendant, Latitude 38º's "duty of reasonable care."

### IV. Maryland's Law on a Landowner's Obligation to Business Invitees is Not Applicable to a Maritime Tort and Does Not "Heighten" Latitude 38º's Duty of Care In Any Event.

Plaintiffs suggest that the court needs to consider the general standard of care owed to business invitees by land owners in the State of Maryland and that such a standard establishes "a heightened duty to protect the visitor or invitee." (Memo p. 10-11)  Plaintiffs do not seem to dispute that the general maritime law of negligence applies.   However, it is well established law that "once admiralty jurisdiction is established all the substantive rules and precepts peculiar to the law of the sea become applicable.  A plaintiff's cause will be determined under principles of maritime negligence rather than common law negligence."  Thomas J. Schoenbaum, Admiralty and Maritime

Law, 2d Ed. p. 156.  The Maryland case cited by plaintiffs Paquin v. McGinnis, 246 Md. 569 (1967), does not establish any "heightened duty" in any event.

V. **Natural Resources Article § 8-725.4 Applies Only to Engine Noise and Provides No Separate Basis for Liability.**

Plaintiffs concede that the applicability of § 8-725.4 to noise events other than engine noise is "unclear." (See Plaintiffs' Memo p. 11 fn. 3)  Plaintiffs do not discuss or distinguish any of the Maryland law cases cited by defendant Latitude 38º regarding the existence of a private cause of action.  Staley v. Americorp Credit Corp., et al., 164 F. Supp 2d 578 (D. Md. 2001); Erie Insurance Company v. Chops, 322 Md. 79, 585 A.2d 232 (1991); Fisher v. O'Connors, 53 Md. App. 338, 452 A.2d 1313 (1982).  Rather, plaintiffs cite a 1975 federal court decision relating to violations of the Rivers and Harbors Act, 33 U.S.C. § 403, decided before the multifactor test established by the U.S. Supreme Court in Cort v. Ash, 422 U.S. 66, 78, 45 L.Ed.2d 26, 96 S.Ct. 2080 (1975).  In doing so it has ignored over 25 years of Supreme Court jurisprudence and Maryland Law which modifies the federal and state law of implying private rights of action for violations of statutes.  (See Erie Insurance, supra, adopting the Cort v. Ash, test in Maryland.)  In addition, plaintiffs now seem to be citing some tort of "public nuisance" which was never mentioned its Amended Complaint.

## CONCLUSION

For all of the above reasons the defendant Latitude 38º's Motion for Summary Judgment should be granted.

                                                        /s/
David W. Skeen


                                                        /s/
Wright, Constable & Skeen, L.L.P.
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, Maryland  21201-3812
(410) 659-1307
Attorneys for Defendant and
Third-Party Plaintiff,
Latitude 38º LLC

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this 26th day March, 2004, copies of defendant, Latitude 38º LLC's Reply to Plaintiffs' Opposition to its Motion for Summary Judgment, was served via e-filing and/or mailed, first class, postage prepaid to Murray I. Resnick, Esq. and Prabir Chakrabarty, Esq., Resnick & Abraham, L.L.C., One East Franklin Street, Baltimore, Maryland  21202, Attorneys for Plaintiffs; Robert H. Bouse, Jr., Esq., 201 N. Charles Street, Suite 2000, Baltimore, Maryland  21201-4102, Attorney for defendant, The "Imagine…!" Yacht, LLC., and Eric N. Stravitz, Esq., 2015 R Street, NW, Suite

300, Washington, D.C. 20009, Attorney for Third-Party Defendant, Sher & Blackwell.

_____/s/_____<br>
David W. Skeen #01084

DWS.LATITUDE.LAWRENCE.REPLY.OPP.MSJ.lan