## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

JEFFREY F. AND DONNA LAWRENCE,   \*

    Plaintiffs,             \*

       v.                 \*       CIVIL NO. RDB 02-3224

THE "IMAGINE . . .!" YACHT, LLC, et al.,  \*

    Defendants.          \*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### MEMORANDUM OPINION

Plaintiff Jeffrey F. Lawrence is a partner in the law firm of Sher & Blackwell, LLP ("Sher & Blackwell"). Plaintiff Donna Lawrence is his wife. Plaintiffs allege that Mr. Lawrence sustained hearing damage from the loud sound that was emitted upon the firing of a small cannon by the crew of the vessel owned and operated by the "IMAGINE . . . !" Yacht, LLC ("IMAGINE"). Mr. Lawrence was on board the vessel for a social outing sponsored by Sher & Blackwell when the incident occurred, on September 16, 2001. The Lawrences filed the instant action against IMAGINE, and IMAGINE's "charter broker," Latitude 38 ELLC d/b/a Annapolis Bay Charters ("Annapolis Bay") on October 2, 2002. Plaintiffs' Amended Complaint sets forth four Counts: Count I for negligence; Count II for breach of contract; Count III for violation of Md. Ann. Code, Natural Resources, § 8-725.4 (West 2004) (operating a vessel on the waters of the state so as to exceed a noise level of 90Db); and Count IV for loss of consortium. Annapolis Bay has filed a crossclaim against IMAGINE seeking indemnification or contribution. IMAGINE and Annapolis Bay filed third-party complaints against Sher & Blackwell contending that the law firm is at least partially liable for Plaintiffs' injuries.

Three motions for summary judgment are now pending before the Court.  Annapolis Bay moved for summary judgment arguing that it bears no liability for Plaintiffs' injuries as the mere broker arranging the charter of the IMAGINE.  Sher & Blackwell filed a Motion for Summary Judgment claiming that it is not a proper Defendant under Federal Rule of Civil Procedure 14(c) and that the Charter Agreement between the parties absolves the law firm of all liability.   IMAGINE moved for partial summary judgment claiming that Count III of Plaintiffs' Complaint should be dismissed because the Maryland statute on which it is based confers no private right of action.  The issues have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).

For the foregoing reasons, Annapolis Bay's Motion for Summary Judgment will be GRANTED, IMAGINE's Motion for Partial Summary Judgment as to Count III will be GRANTED, Sher & Blackwell's Third-Party Motion for Summary Judgment will be DENIED, and Count III will be DISMISSED.

## I.    Background

Annapolis Bay is a "charterer's agent," or "booking agent" which markets boat charters and handles various administrative aspects of the boat charter on behalf of the boat owner.  (Davis Dep. at 56-57.)  More specifically, the company provides the interested group with a charter agreement, schedules the excursions on various vessels, hires the caterers, tells the vessel where to show up, tells the vessel how many passengers will be going on a trip, and collects the proceeds of the trip for distribution to the boat owner and the caterer.  (Bagley Dep. at 73-74.)  In exchange for these services, Annapolis Bay receives a ten percent commission.  (Davis Dep. at 36.)

In September of 2001, Annapolis Bay served as the charter broker for the Yacht IMAGINE.

The Yacht IMAGINE is a 73' schooner which is Coast Guard certified for carrying passengers. (Lee Aff. at ¶ 3.) Michael Bagley is a Coast Guard Certified captain who operated the schooner with a crew of two. (*Id.*) The vessel was owned by Yacht IMAGINE, LLC, whose shareholders included Michael Bagley and T.C. Schweer. (*Id.* at ¶ 2.) Prior to 2001, Annapolis Bay had brokered many charters between the Yacht IMAGINE and various groups and had received no complaints. (*Id.* at ¶ 3.) Captain Bagley and his crew enjoyed an excellent reputation in the Annapolis boating community. (*Id.*)

At some point in September of 2001, Lisa Henshaw of Sher & Blackwell contacted Annapolis Bay to inquire about chartering a boat for the firm's outing. Ms. Henshaw spoke with Krystal Davis of Annapolis Bay, who gave her price quotes and eventually supplied her with a copy of a proposed charter agreement for the Yacht IMAGINE. Ms. Henshaw executed the finalized Charter Agreement on behalf of Sher & Blackwell on September 13, 2001. (Def. Annapolis Bay's Mem. Supp. Mot. Summ. J. Ex. 4 at 1.) The Charter Agreement sets forth the details of the itinerary for a 3-hour sail including catering and bar service. (*Id.*) The Agreement was executed by Ms. Davis on behalf of Annapolis Bay on that same date. (*Id.* at 1.) Paragraph 5 of the "Conditions" attached to the Charter Agreement[1] provides, in relevant part:

> GUEST AREAS: CHARTERER UNDERSTANDS AND AGREES THAT AT ALL TIMES THE POSSESSION AND USE OF THE PASSENGER AREAS UNDER

---

[1]Plaintiffs point out the fact that the second page of the Charter Agreement containing the "Conditions" is not signed. However, as Defendant Annapolis Bay observes, the signed page of the Agreement states that "This Agreement . . . is subject to all the terms and conditions on page two, in addition to any addendums attached which are made a part hereof." (Def. Annapolis Bay's Mem. Supp. Mot. Summ. J. Ex. 4 at 1.) Plaintiffs do not appear to dispute the applicability of the Conditions because Plaintiffs' breach of contract claim is based on one of the Conditions contained within the second page.

> CARE AND CUSTODY OF THE CHARTERER, WHO AGREES TO KEEP
> THESE AREAS CLEAN AND SAFE FOR THE BENEFIT OF THEIR GUESTS.
> IN THE EVENT ANY GUESTS ARE INJURED IN THE PASSENGER AREAS
> DURING THE CHARTER, UNLESS CAUSED BY THE NEGLIGENCE OF THE
> OWNER, THE CHARTERER AGREES TO HOLD OWNER HARMLESS FROM
> LIABILITY.

(*Id.* at 2.)

At some point after the cruise was under way, the crew announced that refreshments were available below deck. (Lawrence Dep. at 24:18-21.)  Mr. Lawrence went below deck to get something to eat and to use the restroom facilities. (*Id.* at 25:4-8.)  Just after Mr. Lawrence returned to the main deck of the Yacht, there was a loud explosion off to his left, which resulted from the firing of a small cannon. (*Id.* at 25:15-20.)  As a result of the cannon blast, Mr. Lawrence immediately experienced hearing loss and ringing in his ears. (Henshaw Dep. at 20:20-21:19.)  He was later diagnosed with permanent hearing loss and tinnitus as a result of exposure to the cannon blast. (Pl.'s Mem. Opp. Def.s' Mot. Summ. J. Ex. F.)

The cannon was fired as part of a nautical tradition whereby the schooner captain salutes a fellow captain when passing another ship. (*See* Henshaw Dep. at 14:11-16.)  Prior to firing the cannon, a member of the IMAGINE crew announced that they were going to fire a cannon, that it would be loud, and that passengers should cover their ears and move away. (*Id.*)  Mr. Lawrence did not hear the warning because he was below deck.

## II.     <u>Standard of Review</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only

"facts that might affect the outcome of the suit under the governing law" are *material*. *Anderson*, 477

U.S. at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* The court further explained that, in

considering a motion for summary judgment, a judge's function is limited to determining whether

sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a

jury for resolution at trial. *Id*. at 249. In that context, a court is obligated to consider the facts and all

reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

      However, "[w]hen the moving party has met its responsibility of identifying the basis for its

motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine

issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)). Thus, Rule 56

mandates summary judgment against a party "who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp.*, 477 U.S. at 322. If the evidence presented by the nonmoving party is

merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477

U.S. at 249-50. Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving

party's case is insufficient to preclude an order granting summary judgment. *Id*. at 252. Furthermore,

5

District Courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323-24).

When multiple parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment– even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985).

The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("neither party waives the right to a full trial on the merits by filing its own motion"). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983).

6

III.   **Analysis**

A.     **Motions for Summary Judgment of Annapolis Bay and IMAGINE**

Annapolis Bay seeks summary judgment on three grounds.[2]  First, it contends that Plaintiffs'

negligence Count against it is without merit because, as a mere booking agent, the company owed

Plaintiffs no duty.  Second, Annapolis Bay contends that the breach of contract claim also fails because

the Charter Agreement imposed no obligations upon Annapolis Bay with respect to Plaintiffs.  Finally,

Annapolis Bay argues that Plaintiffs' claim under the Maryland waterway noise abatement statute is

unavailing because that statute provides no private right of action.  IMAGINE seeks partial summary

judgment as to Count III and similarly argues that the noise abatement statute does not provide a

private right of action.  These arguments are correct in light of the facts before the Court and the

governing legal standards.

1.     **Negligence**

Under admiralty law,[3] the shipowner and/or the operator of a ship owes the ship's passengers a

duty of reasonable care under the circumstances of the voyage.  *See Kermarec v. Compagnie*

*Generale Transatlantique,* 358 U.S. 625 (1959).  However, that duty does not extend to brokers,

---

[2]The Motion does not address Count IV, for loss of consortium.  However, because the Court finds that Annapolis Bay is not liable for Plaintiffs' direct injuries, summary judgment must also be entered as to the loss of consortium claim.

[3]Paragraph 1 of Plaintiffs' Amended Complaint proclaims "[t]his is an action for personal injuries under the general Maritime law of the United States, Maryland law, and any other applicable law."  None of the parties have disputed either the applicability of maritime law or the sufficiency of Plaintiffs' pleading of the maritime action under Federal Rule of Civil Procedure 9(h).  The negligence claim is properly brought in admiralty because the alleged tort has a "significant connection to traditional maritime activity" and it occurred on navigable waters.  *See Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 20, 36 (1972).

ticketing agents and other such agents of the boat owner, like Annapolis Bay. *See Schrader v. Royal Caribbean Cruise Line, Inc.,* 952 F.2d 1008, 1010-11 (8th Cir. 1991) (describing district court's grant of summary judgment of Royal Caribbean Cruise Line, Inc. on the ground that the entity "was only the sales agent and had no part in operating the ship" on which the alleged injuries occurred); *Klinghoffer v. ACHILLE LAURO*, 816 F. Supp. 934 (S.D.N.Y. 1993) (holding that travel agency which sold the plaintiffs a tour package had no duty to insure against negligence of cruise ship's crew); *Bowns v. Royal Viking Lines, Inc.,* 1977 AMC 2159 (S.D.N.Y. 1977) (recognizing that a ticketing agency responsible for arranging cruises is not liable where the agency was a mere agent to the disclosed principal). Likewise, the duty does not generally extend to charterers unless the charterer assumes control or operation of the vessel.[4] "A time charterer assumes no responsibility for the unseaworthiness of the vessel or the negligence of the crew unless the charter agreement provides otherwise." *ACHILLE LAURO*, 816 F. Supp. at 936 (quoting *Scholl v. Chuang Hui Marine Co., Ltd.,* 646 F.Supp. 137, 138-39 (S.D.N.Y. 1983)).

In this case, Plaintiffs argue that Annapolis Bay owed Plaintiffs a duty, *inter alia,* because the company exercised such a great degree of control over the operations of the IMAGINE that it is liable as the "owner" of the vessel. Based on its "management" of the schooner, Plaintiffs allege that Annapolis Bay owed them the following duties: 1) the duty to guard against negligent hiring, retention, and supervision of the IMAGINE crew; 2) the duty to ensure against negligence in firing the cannon

---

[4]Sher & Blackwell's commission of the IMAGINE was apparently a "time charter" (or a modern derivation therefrom) in which IMAGINE's owner and crew retained control of the vessel. *See* 8 *Benedict on Admiralty* § 18.02, 18-4 (7th ed. (rev.) 2003) Under a time charter, the charterer, in this case Sher & Blackwell, obtains a license to use the passenger areas of the vessel and to direct the owner's employment subject to the terms of the charter agreement. *See id.*

without providing the proper warnings; and 3) the duty to ensure that the cannon a "dangerous and illegal device" was not on board the IMAGINE.

There are no facts to support this theory. Plaintiffs' own evidence reveals that Annapolis Bay was merely IMAGINE's booking agent for the Sher & Blackwell cruise. Plaintiffs' assertions that Annapolis Bay "controlled" IMAGINE are based solely on deposition testimony by Annapolis Bay employee Krystal Davis, and IMAGINE owner, Michael Bagley.

Plaintiffs note that Ms. Davis testified that the IMAGINE was "under the management" of Annapolis Bay. (Davis Dep. at 15:16-17.) However, Plaintiffs failed to submit the remainder of that same sentence in which she adds that the IMAGINE was "under the management of [Annapolis Bay] *as far as brokerage*." (*Id.* at 17) (emphasis supplied). Consistent with that qualification, she further testified that Annapolis Bay did not own IMAGINE,[5] that Annapolis Bay simply managed the calender and brokered charters for the IMAGINE, and that the charter agency had no role in the overall operations of the boat. (*See id.* at 15-17.)

In much the same way, Plaintiffs' reliance on Mr. Bagely's testimony that Annapolis Bay "managed the comings and goings"[6] of the IMAGINE is misplaced. Mr. Bagley testified that Annapolis Bay "would do all of the sales work, all of the contract work" for the IMAGINE and that they would "manage the details" of booking charters for the boat. (Bagley Dep. at 73:4-12.) Neither Mr. Bagley nor Ms. Davis said anything to indicate that Annapolis Bay had any role in the operation of the IMAGINE. (*See generally* Bagley Dep.; Davis Dep.) Because this evidence is the sole support for

---

[5](*Id.* at 16:1-7.)

[6](Bagley Dep. at 73:4-5.)

Plaintiffs' assertion of the "management theory," that theory fails as a matter of law.[7]

In support of their argument that Annapolis Bay had "management control" over IMAGINE, Plaintiffs cite exclusively to *Chan v. Society Expeditions,* 123 F.3d 1287, 1293-94 (9th Cir. 1997). That case is inapposite. The defendant in *Chan* was the plaintiff's employer and the charterer of the cruise on which the plaintiff's injuries occurred. *Id.* In reversing the district court's grant of summary judgment in favor of the employer, the United States Court of Appeals for the Ninth Circuit recognized that the defendant had "a duty . . . to transport passengers safely and to exercise reasonable care under the circumstances of each case." *Id.* at 1290. However, this duty was entirely dependent upon the court's finding that the defendant was a common carrier. *Id.* In so determining, the court relied heavily on the fact the defendant had specifically held itself out as the carrier by issuing a ticket containing a "contract of carriage" in which the defendant was named as the carrier for the voyage. *Id.* at 1291. Equally central to the *Chan* court's determination of the defendant's status as a common carrier was the fact that the defendant in that case participated in "the actual movement of passengers." *See Chan,* 123 F.3d at 1291 (quoting *Weade v. Dichmann, Wright & Pugh, Inc.,* 337 U.S. 801, 805 (1949)).

In contrast, there is no evidence before the Court to support a finding that Annapolis Bay is a common carrier. Annapolis Bay had no responsibilities for the Sher & Blackwell passengers. Moreover, in contradistinction to the *Chan* plaintiff, who signed a contract of carriage issued by the

─────────────────

[7]Plaintiffs' characterizations of testimony are insufficient to create a genuine issue of material fact for summary judgment purposes. *See Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (noting that a party can "survive [a] motion for summary judgment only by adducing specific, nonspeculative evidence. . . ."); *Ross v. Communications Satellite Corp*., 759 F.2d 355, 364 (4th Cir. 1985) ("[W]holly speculative assertions will not suffice [to avoid summary judgment]."); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (observing that "mere speculation or building one inference on another" is insufficient to overcome a motion for summary judgment).

defendant,[8] Annapolis Bay never signed any contract with Plaintiffs.  The Charter Agreement was

between Annapolis Bay and Sher & Blackwell.  (*See* Def. Annapolis Bay's Mem. Supp. Mot. Summ.

J. Ex. 4 at 1.)  The undisputed evidence before this Court is that Annapolis Bay was a mere booking

agent that participated in neither the general operations of the IMAGINE nor the specific activities

related to the Sher & Blackwell charter.  As such, Defendant Annapolis Bay had no duty with respect

to the activities of the crew of the IMAGINE or of the personnel of Sher & Blackwell.

      In addition to the "management" theory, Plaintiffs also argue that Annapolis Bay had an

"affirmative duty to investigate the quality of supplier service" as a charter broker.  In support of its

"affirmative duty" theory, Plaintiffs rely upon *Honeycutt v. Tour Carriage, Inc.*, 997 F. Supp. 694,

702 (W.D.N.C. 1996).  This reliance is puzzling, however, given that court's restatement of the well-

settled rule that  "[a] tour operator may rely initially on the general reputation of the supplier and may

continue to offer the services of the supplier where its experience with the supplier has been

satisfactory."  *Id.* (internal citations omitted).  The facts before this Court indicate that Annapolis Bay

fully complied with this standard.  Annapolis Bay knew the IMAGINE to be a seaworthy vessel with a

reputable captain and crew.  (Lee Aff. at ¶ 3.)  Prior to 2001, Annapolis Bay had brokered many

charters between the YACHT IMAGINE and various groups and had received no complaints.  (*Id.*)

Annapolis Bay had no knowledge of IMAGINE's use of a cannon prior to September of 2001.  (*Id.* at

¶ 4.)  Even if the company had been made aware of this, the evidence clearly indicates that it was the

responsibility of the captain and crew to give the proper warnings and take the proper precautions.

---

[8]*See Chan,* 123 F.3d at 1290.

(*Id.*)  Moreover, Plaintiffs have offered no evidence to rebut the testimony and affidavits submitted by

Annapolis Bay.[9]  Consequently, there is no basis on which to find that Annapolis Bay breached a duty

to Plaintiffs as the booking agent for the Sher & Blackwell charter.  *See ACHILLE LAURO*, 816 F.

Supp. at 936 (affirming the grant of summary judgment in favor of defendant ticket agent where plaintiff

failed to rebut evidence that the vessel in question was "well-respected within the travel community"

and that the agency had received no prior complaints about the ship).

Plaintiffs have failed to demonstrate that Annapolis Bay owed Plaintiffs any legal duty that

would render the company liable for Plaintiffs' injuries under a theory of negligence.  Accordingly,

summary judgment is granted in favor of Defendant Annapolis Bay on Count I of Plaintiffs' Complaint

(negligence).

### 2.    **Breach of Contract**

Plaintiffs' breach of contract allegation against Annapolis Bay is found in Paragraph 21 of their

Amended Complaint, which provides: "Pursuant to Paragraph 5 of the Charter Agreement and

Condition, Annapolis Bay Charters . . . understood and agreed that at all times they agreed to keep the

passenger areas clean and safe for the benefit of their guests."  Yet Paragraph 5 of the Charter

Agreement refers only to the duties of the "Charterer" with regard to the passenger areas of the vessel.

(Def. Annapolis Bay's Mem. Supp. Mot. Summ. J. Ex. 4 at 2.)  Plaintiffs have not disputed that Sher &

---

[9]Plaintiffs' do not adequately rebut this evidence by citing the case of *Hartford Fire Insurance Co. v. Annapolis Bay Charters, Inc.,* 69 F. Supp. 2d 756 (D. Md. 1999).  That case involves an insurance dispute that was based on a personal injury sustained when a boat chartered by Annapolis Bay Charters, Inc. was docking. The case involves a different (unnamed) vessel with a  presumably different captain and crew under wholly different circumstances.  There is nothing about that case that would give rise to any suspicion that a passenger might be injured on the IMAGINE Yacht by the firing of a cannon.

Blackwell, not Annapolis Bay, was the "Charterer" to which the contract refers.[10]  Moreover, the plain

language of the contract reveals that the term "charterer" was used to refer to the group "chartering" the

vessel–Sher & Blackwell.[11]  Plaintiffs have neither suggested that the relevant paragraph's language is

ambiguous nor provided any evidence that would alter the ordinary meaning of the terms.  Courts have

generally recognized the distinction between "charterers" who pay for the use of some portion of the

vessel and take on the attendant responsibilities, and the booking agents who are not responsible for

happenings of the voyage.  *See e.g., Schrader,* 952 F.2d at 1010-11; *ACHILLE LAURO*, 816 F.

Supp. at 936.  Nevertheless, Plaintiffs' sole basis for asserting its breach of contract claim against

Annapolis Bay is that the broker breached its contractual duty as defined in paragraph 5.  Annapolis

Bay had no duties under paragraph 5, and Count II of Plaintiffs' Complaint is therefore dismissed as to

Defendant Annapolis Bay.  *See World-Wide Rights Limited Partnership v. Combe Inc.,* 955 F.2d

242 (4th Cir. 1992) (summary judgment is appropriate where contract is unambiguous on dispositive

issue).

### 3.     Violation of Maryland Statute on Noise Levels of Vessels

Annapolis Bay and IMAGINE each challenge Count III on the ground that a Maryland noise

abatement statute does not provide a private right of action to Plaintiffs.  Count III of Plaintiffs'

Amended Complaint asserts a cause of action under Md. Ann. Code, Natural Resources, § 8-725.4

---

[10]In their Response in Opposition to Defendant Annapolis Bay's Motion for Summary Judgment, Plaintiffs did not address Annapolis Bay's arguments concerning the breach of contract count.

[11]For example, paragraph 2 of the Charter Agreement provides that "[c]harterer agrees to give advance guest guarantee for all food and beverage services not less than 10 days prior to the cruise date."  Similarly, paragraph 6 of the Charter Agreement states that, "[i]f charterer cancels, any funds already paid will be refunded only if owner is able to re-book the vessel . . . ."

(b)(1) (West 2004) ("noise levels statute").  Section 8-725.4(b)(1) provides that "a person may not

operate a vessel on the waters of the State so as to exceed a noise level of 90dB(a)."  Plaintiffs contend

that the statute prohibits the blast resulting from the firing of the cannon that caused Plaintiffs' injuries

and that the statute therefore provides the Plaintiffs with a private cause of action.  However, the noise

levels statute is regulatory in nature, and provides for no private right of action.  As a consequence,

Plaintiffs' claim under the statute is only viable if the statute implies a private right of action under the

relevant Maryland law.  *See Staley v. Americorp.,* 164 F.Supp.2d 578, 579 (D. Md. 2001).

The Maryland Court of Appeals has adopted the multi-factor test set forth by the Supreme

Court in *Cort v. Ash,* 422 U.S. 66, 78 (1975), for determining whether a statute implies a right of

action.  *Erie Ins. Co. v. Chops,* 322 Md. 79, 585 A.2d 232, 237 (Md. 1991).  Those factors

include a determination of: (1)  whether it is consistent with the underlying purposes of the legislative

scheme to imply such a remedy for the plaintiff; (2) whether there is any indication of legislative intent,

implicit or explicit, either to create such a remedy or to deny one; and, (3) whether the plaintiff is one of

the class for whose special benefit the statute was enacted.  *Erie Ins. Co.*, 322 Md. at 91, 585 A.2d at

237.

In applying these factors, the Maryland Court of Appeals "has distinguished between those

statutes designed to confer a general benefit on the public at large and those designed to protect a

subgroup of the public or to preserve or create individual rights."  *Staley,* 164 F. Supp. 2d at 580

(quoting *IVTX. Inc. v. United Healthcare of the Mid-Atlantic, Inc.,* 112 F. Supp. 2d 445, 447 (D.

Md. 2000)).  No private right of action will be inferred from a statute that was designed to confer a

benefit on the public at large.  *See Staley,* 164 F. Supp. 2d at 580 (citing *Sugarloaf Citizens Ass'n,*

14

*Inc. v. Gudis,* 78 Md. App. 550, 554 A.2d 434, 438 (1989) *aff'd on other grounds,* 319 Md. 558,

573 A.2d 1325 (1990)).  It is well-established under Maryland law that a public safety ordinance does

not imply a private right of action.  In *Widgeon v. Eastern Shore Hosp. Ctr.,* 300 Md. 520, 479 A.2d

921, 929 (1984), the Maryland Court of Appeals held that there was no private right of action under

local safety ordinances that were enacted to confer a general benefit on the public at large.

      The noise levels statute at issue here was clearly designed to confer the "public benefit" of

curbing the noise pollution that can result from boats with loud engines.[12]  Section 8-725.4 is a detailed

provision that is part of the broader "State Boat Act," which encompasses an array of regulations

concerning the licensing and operation of pleasure craft.  *See* Md. Code Ann., Natural Resources

Article, § 8-704 (West 2004).  Section 8-704(f), the broader provision from which the noise levels

statute is derived,  provides that the Maryland Department of Natural Resources ("DNR"), "shall adopt

and publish sound level limits governing the noise generated by the operation of pleasure craft on the

waters of the State."  The provision also states that DNR "shall adopt regulations for the administration

and enforcement of the sound level limits, taking into account accepted scientific and professional

methods for measurement of sound levels."  § 8-704(f).  In compliance with those mandates, Section

8-725.4 provides the acceptable noise levels that were determined by DNR pursuant to § 8-704(f),

and sets forth various exemptions for fishing boats, emergency boats, etc.  To comply with the

enforcement provisions of 8-704(f), DNR has developed specific procedures for enforcement of the

acceptable noise levels emitted by "the operation" of pleasure craft, all of which indicate that the

---

[12] Plaintiffs imply as much by stating, "[i]t is unclear from the limited case law on application of this statute whether it applies to only engine noise."  (Pl.'s Mem. Opp. Def.' Mot. Summ. J. at 3-4 n.3.)

provision is aimed at curbing engine noise emitted from vessels that are not outfitted with the proper

type of muffler.  *See* Md. Regs. Code Natural Resources § 08.18.03.05 (West 2004).  The most

prominent of which is the fact that the primary enforcement technique is a sound check conducted by a

DNR officer using a machine that measures the surface noise emitted from the boat engine.  *See id.*

   As Judge Motz of this Court noted in *Staley,* to permit private causes of action that may be

"inconsistent with the administrative scheme that the General Assembly established" runs the risk of

creating "conflicting rules, interpretations, and practices that would ultimately hinder the enforcement" of

regulatory provisions like the noise regulation scheme at issue here.  164 F. Supp. 2d at 582.   Based

on those concerns, Judge Motz granted a motion to dismiss a count alleging a private right of action

under the Maryland Mortgage Lender Law, Md. Code Ann., Fin. Inst., § 11-501, *et. seq*.  *Staley,*

164 F. Supp. 2d at 582.  In so granting, Judge Motz recognized that the Maryland Court of Appeals

has generally "been reluctant to find an implied grant of a private cause of action."  *Staley,* 164 F.

Supp. 2d at 582 (quoting *Magan v. Med. Mutual Liab. Ins. Soc'y of Md.,* 331 Md. 535, 629 A.2d

626, 631 n. 4 (1993)).

   Likewise, the statutory and regulatory language of the noise levels statute at issue here  reveals

that the scheme was intended to confer "general benefit" of noise reduction on the public at large.  *See*

*Sugarloaf,* 78 Md. App. 550, 554 A.2d 434; *Widgeon,* 300 Md. 520, 479 A.2d 921.  To implement

that goal, DNR has created a detailed enforcement scheme that objectively measures engine noise.

Like the mortgage laws at issue in *Staley*, the enforcement of Maryland's noise levels regulatory

scheme would be "ultimately hindered" by the "conflicting interpretations" of the statute that would

result from private actions such as Plaintiffs'.  Implying a private cause of action based on the noise

16

levels statute would risk opening floodgates to a limitless array of actions that were not envisaged by the General Assembly's narrowly-defined statutory and regulatory scheme. Accordingly, this Court finds that Section 8-725.4 confers no private right of action.

In light of this Court's finding that there is no basis on which to hold Defendant Annapolis Bay liable for Plaintiffs' damages based on any of the four Counts asserted in Plaintiffs' Amended Complaint, the Court will GRANT summary judgment in favor of Annapolis Bay on all of Plaintiffs' Counts. Moreover, Annapolis Bay's Crossclaim against IMAGINE seeking indemnification or contribution will be DISMISSED, as will Annapolis Bay's Third-Party Complaint against Third-Party Defendant Sher & Blackwell. IMAGINE Yacht's Motion for Partial Summary Judgment as to Count III will be GRANTED. Finally, Count III of Plaintiffs' Amended Complaint will be DISMISSED.

**B.      Sher & Blackwell's Third-Party Motion for Summary Judgment**

Sher & Blackwell seeks to be dismissed as a Third-Party Defendant for two reasons. First, the law firm contends that it is an improper third-party defendant under Federal Rule of Civil Procedure 14(c). Second, it argues that it bears no liability under the unambiguous terms of the Charter Agreement. Both of these bases are unavailing for the following reasons.

Third-Party Defendant Sher & Blackwell asserts that IMAGINE's[13] Third-Party Complaint against it was improper under Rule 14(c) because the liberalized third-party provisions of that Rule are limited to actions *in rem*. That claim is simply erroneous. Rule 14(c) provides, in relevant part, that: "When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant

---

[13]As previously noted, Defendant Annapolis Bay's Third-Party Complaint against Sher & Blackwell was dismissed on other grounds.

*or* a person who asserts a right under Supplemental Rule C(6)(b)(i), as a third-party plaintiff may bring

in a third-party defendant who may be either wholly or partly liable, either to the plaintiff or to the third-

party plaintiff, by way of remedy over, contribution or otherwise . . ."   Sher & Blackwell argues that

Rule 14(c) limits the right to bring in third-party defendants to persons asserting *in rem* rights under

Supplemental Rule C(6)(b)(i).  However, the Rule provides the right to *defendants* in the maritime

action *in addition to* any persons asserting property rights *in rem.  See* 8 *Benedict on Admiralty* §

3.01(A), 3-4 (7th ed. (rev.) 2003).  As a consequence, IMAGINE's Third-Party Complaint was

proper under Rule 14(c).[14]

Sher & Blackwell's second contention is that paragraph 5 of the Charter Agreement is an

absolute bar to any liability on its part.  That argument is specifically based on the following sentence:

"IN THE EVENT THAT ANY GUESTS ARE INJURED IN THE PASSENGER AREAS DURING

THE CHARTER, UNLESS CAUSED BY THE NEGLIGENCE OF THE OWNER, THE

CHARTERER AGREES TO HOLD OWNER HARMLESS FROM LIABILITY."  (Def. Annapolis

Bay's Mem. Supp. Mot. Summ. J. Ex. 4 at 2 (emphasis supplied).)  Sher & Blackwell argue that the

phrase "unless caused by the negligence of the owner" renders IMAGINE solely liable for its

---

[14]Citing no legal authority, Sher & Blackwell also asserts that Annapolis Bay's "14(c) allegation that Sher & Blackwell may be directly liable to [P]laintiffs is impermissible under that rule." (Mem. Supp. Sher & Blackwell's Third-Party Mot. Summ. J. at 3.)  They claim that they are not directly liable to Plaintiffs notwithstanding the Third-Party Complaint, because Plaintiffs alleged no claims against the law firm in the Amended Complaint.  (*Id.*)  However, Rule 14(c) provides that a defendant may implead a party "who may be wholly or partly liable, either to the plaintiff or to the third party plaintiff . . . ."  The Rule does not predicate to take such action on the plaintiff's prior assertion of a claim.  6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1465 (3d ed. 1998).

18

negligence. That assertion is undermined by the express language of the contract itself and by the controlling law.

At the outset, it is important to note that the allocation of liability between Sher & Blackwell, as the charterer, and the Yacht IMAGINE, as the owner, turns on the terms of the Charter Agreement. *See Scholl v. Chuang Hui Marine Co.*, *Ltd.,* 646 F.Supp. 137, 139 (D.Conn. 1986) (citing *Leary v. United States,* 81 U.S. 607, 610 (1872)). This is because "[a] time charterer assumes no responsibility for the unseaworthiness of the vessel or the negligence of the crew *unless the charter agreement provides otherwise*." *Scholl,* 646 F.Supp. at 138-39.

The Charter Agreement does not "unambiguously" insulate Sher & Blackwell from liability, as the law firm suggests. Rather, the provision is a qualification on Sher & Blackwell's otherwise complete release of IMAGINE for liability for passenger injuries occurring in the passenger area. The contract does not expressly release Sher & Blackwell from its share of liability. Moreover, read as a whole, the language creates at least an ambiguity as to whether Sher & Blackwell assumed the specific responsibility of ensuring that the passengers were adequately warned in advance of the cannon blast causing Plaintiffs' injuries. *See Scholl,* 646 F. Supp. at 138-39 (charterer can contract to accept liabilities otherwise attributable to owner). Summary judgment is not appropriate in light of this ambiguity. *See Atalla v. Abdul-Baki,* 976 F.2d 189, 192 (4th Cir. 1992) (recognizing that "only an unambiguous writing justifies summary judgment, and no writing is unambiguous if susceptible of two reasonable interpretations); *Cram v. Sun Ins. Office, Ltd.,* 375 F.2d 670, 674 (4th Cir. 1967) (Same); 10B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2727 (3d ed. 1998) (recognizing that summary judgment is inappropriate where contract terms are ambiguous because

19

resolving the ambiguity requires inquiring into the parties' state of mind).

There is a genuine issue of material fact as to Sher & Blackwell's liability and its Third-Party Motion for Summary Judgment is therefore DENIED.[15]

## IV.    CONCLUSION

For the reasons set forth above, Defendant Annapolis Bay's Motion for Summary Judgment is GRANTED, IMAGINE Yacht's Motion for Partial Summary Judgment as to Count III is GRANTED, Sher & Blackwell's Motion for Summary Judgment is DENIED, and Count III is DISMISSED.  An appropriate Order follows.


August 25, 2004                                      /s/_____
                                                    Richard D. Bennett
                                                    United States District Judge

---

[15]Sher & Blackwell also submitted a Motion to Strike IMAGINE's Opposition to their Motion because the Opposition was filed one day late.  Alternatively, Sher & Blackwell submitted its Reply to IMAGINE's Opposition. The Motion to Strike is DENIED because Sher & Blackwell failed to demonstrate any prejudice caused by the delay. Accordingly, the Court has considered Sher & Blackwell's Reply.